## NEW ORLEANS CANAL AND BANKING COMPANY v. ESCOFFIE et al.

A surety, who has bound himself *in solido* with his principal, cannot require the property of the latter to be discussed before recourse is had against him (C. C. 2089, 3014); nor, though the debt be secured by a mortgage on the property of the principal, can the surety compel the creditor to resort to his mortgage, before calling upon him.

A bank will not be responsible for any injury resulting from the omission to protest notes deposited with it for safe-keeping, and not for collection.

APPEAL by the defendant *Boyce*, from a judgment of the District Court of Rapides, *Cushman*, J. *Hyams* and *Elgee*, for the plaintiffs. *H. Boyce*, appellant, *pro se*. *Thomas*, on the same side. The judgment of the court was pronounced by

SLIDELL, J. *Boyce* is sued upon a bond executed in favor of the plaintiffs by *Mrs. Escoffie*, formerly *Sophia Anderson*, as principal, and *Boyce* as surety, in which, however, the parties also acknowledged themselves as jointly and severally indebted to the plaintiffs, and expressly bind themselves *in solido*.

*Boyce* in his answer sets up various grounds of defence, which we will separately state and examine.

I. He pleads that he is merely the surety of *Sophia Anderson*, and as such is entitled to the benefit of discussion. He points out, in his plea, certain property of *Sophia Anderson*, and makes a tender of a sum for costs to carry on the discussion. The plea cannot be sustained. The Code is clear and conclusive against it. The obligation of the surety towards the creditor is, to pay

him in case the debtor should not himself satisfy the debt; and the property of such debtor is to be previously discussed or seized, unless the surety should have renounced the plea of discussion, or should be bound *in solido* with the debtor, in which case the effects of his engagement are to be regulated by the same principles which have been established for debtors *in solido*. Civil Code, art. 3014; see also art. 2089. *Smith v. Scott*. 3 Rob. 260. Duranton, lib. 3, tit. 14, § 332.

II. He pleads that the bank has granted delay to the principal debtor, without his consent; also that the bank postponed the sale of certain property mortgaged by *Sophia Anderson* to secure the bond, and granted unnecessary delays in the execution of the writ of seizure and sale, until, in the mean while, the property became greatly depreciated in value, when it was sold on execution, and bought by the bank. Some delay did occur in the execution of an order of seizure and sale, which was attributable partly to the written request of the defendant himself, and partly to the sheriff's inability to obtain a mortgage certificate, by reason of the absence of the parish judge, and the subsequent vacancy in that office. We find no evidence of any act done by the bank to the detriment of the defendant in the prosecution of their mortgage; nor are we aware of any rule of law which compelled them to resort to their mortgage rights at all, before calling upon *Boyce*, the debtor *in solido*.

III. The defendant pleads that the bond was given in settlement of a debt due to the bank by *Wm. R. Anderson*, deceased, and by *Sophia Anderson*, his widow in community: That *Brewer*, the executor of *Anderson*, as an inducement to the defendant to sign the bond, transferred to him four notes drawn by *Mrs. Escoffie*, and endorsed by *Brewer* individually, and as executor, and by *Culbertson*, payable at the Canal Bank's office at Alexandria, as a collateral security to indemnify the defendant against the consequences of signing the bond: That before the notes matured they were deposited in the office of the Canal Bank's branch at Alexandria, for the benefit and security of the defendant, and to be collected and proper measures taken thereon, which the bank was bound to do; but that, when the notes fell due, the bank neglected to have the notes protested, or any demand made, or notice to endorsers given, whereby he has sustained damage to the amount of the notes, which he pleads in reconvention.

The facts material to the consideration of this branch of the defence are: that the Canal Bank originally held *Culbertson's* note, endorsed by *W. R. Anderson* and by *Boyce*, which was protested at maturity, and *Boyce* was notified. The present bond was given in payment of that note, upon which, by protest and notice, *Boyce* had become unconditionally liable, and upon which suit had been brought against him. Before *Boyce* signed the bond, *Brewer*, as executor of *Anderson*, promised to give *Boyce* the notes as collaterals for his indemnity. The bond bears date on the 21 December, 1841. On the first of March, 1842, *Brewer*, as executor, by notarial act, transferred the four notes to *Boyce* as " collateral security," and " to indemnify *Boyce* from all loss that he may sustain on account of the suretyship on the bond." This act was not notified to the bank till 1846; but on the day of its execution, *Brewer* went with *Boyce* to the office of the bank, and stated to the cashier their agreement that the notes should be a collateral security for *Boyce*, as the surety on the bond. The notes, with other assets of *Anderson's* estate, had been left by the executor at the bank for safe keeping, in a bundle or envelope. The four notes were taken out of the package and put in a separate envelope, upon which was endorsed a

NEW ORLEANS
CANAL AND
BANKING
COMPANY
v.
ESCOFFIE.

memorandum that they had been transferred by the executor to *Boyce*, as his collateral security for his suretyship on the bond of *Sophia Anderson*. On the back of the notes are pencil memoranda over the initials of *Chew*, cashier, stating as to one : "No funds"; and as to the other : "Not protested by request of *Brewer*, and no funds." The cashier states that notes were very often deposited at the bank for safe keeping, and without having any connection with the business of the bank ; that if they had been deposited for collection, they would have been entered on the books of the bank ; that no entry in the books was ever made ; that the agreement between *Brewer* and *Boyce* had no connection with the execution of the bond, so far as the bank was concerned ; that he never was authorised to receive, and never did receive, the notes as security for the bond ; and that it was a mere deposit for safe keeping at the request of the parties ; that when *Brewer* originally deposited them for safe-keeping, he said there was no necessity for protesting them, as he was first and last endorser; that *Boyce* never asked him to have them protested ; and that when notes are brought for safe-keeping they are not protested, unless it be requested. In 1846, *Boyce* exhibited his notarial act of transfer from *Brewer* to *Chew*, the cashier of the bank, who gave him the notes. There are several other circumstances tending to show that the bank had no connection with, nor interest in the notes, as collaterals; and that in fact *Chew*, personally, was considered as the friendly depositary of the parties, *Brewer* and *Boyce*. Among them the most prominent are, that *Brewer* brought suit in 1844, against *Chew*, individually, to compel him to give up the notes, which *Chew* refused to do without *Boyce's* consent. This suit was dismissed at *Boyce's* instance, and a written agreement was signed by *Brewer*, as executor, that the notes should remain in *Chew's* hands. So when *Boyce* twice received the note from *Chew*, he receipted to him individually, and not as cashier. Both the suit and these receipts were long after the maturity of the notes; and no complaint appears to have been made by either *Brewer* or *Boyce*, about the omission to protest, until it was set up in the present action. It is quite clear, under this state of facts, that there is no liability upon the bank by reason of the non-protest of the notes, and the omission to notify the endorsers. In the most favorable view for the defendant, and considering the bank, and not *Chew*, personally, as the depositary, it was a mere deposit for safe-keeping, and not for collection ; and the notes were not a collateral security to the bank, but merely to *Boyce*, as between him and *Brewer*, the executor. *Chew's* testimony as to the usages of banks, and the mode of depositing for collection, is in accordance with experience. There is no ground whatever to charge the bank for any loss which may have resulted from the omission to protest.

*Judgment affirmed.*